Your Honor, this case on the docket, 2-17-0754, Elvis Walker v. Hunt, the Wilson family limited and new, very, doing business at very good prices, Richard Wilson v. Grace Wilson, defendants at least, arguing on behalf of the plaintiff, the felon, Mr. Stephen A. Hine, draft court, arguing on behalf of the defendants at least, Mr. Michael L. Reese. Gentlemen, you're both ready to proceed? Then counsel, when you're ready. May it please the court. Good morning. So, we're here today on the case of Elvis Walker v. Wilson and five points defendants.  It's our position that on all of the issues before you, Your Honor, there is sufficient evidence from which a jury could conclude that they are a liability. We feel that the error in this case was that the trial judge substituted his opinion and treated it like a bench trial. So, instead of doing the balancing as to whether or not there was sufficient evidence from which one could conclude that there is liability on the defendants, we believe there was error. So, you think the issue of whether it was a natural accumulation or an unnatural accumulation is a question of fact for the trial defendants? I do believe that, yes. And there's a couple of issues here. There's plenty of testimony by Elvis Walker and his sister-in-law to establish that the parking lot had been left in a condition of disrepair and that, therefore, the ice on top of this parking lot that was in disrepair is an unnatural accumulation. But could they say that that is what caused them to fall? Yes, because Elvis testified that that ice was thick and was bumpy, and I believe that there's enough evidence in the record to conclude that it was in that condition because of the state of disrepair of the parking lot. Did somebody actually say, though, this is what caused me to fall? I mean, is there an inference that has to be made there or was there a direct evidence, direct statement that, hey, it's that bumpy ice that really caused me to fall? I believe that it is a reasonable inference from the evidence that that is because the state of disrepair of the parking lot caused an unnatural accumulation, that, yes, the condition of the parking lot caused the unnatural accumulation and definitely the unnatural accumulation is what caused Elvis to fall. So your position is just if somebody testifies and says, there was a crack in the parking lot, therefore, water must have accumulated, therefore, the water must have frozen, and that's where I fell. That's enough? Not exactly because this was not just one crack. This was the entire parking lot was in disrepair, and there were holes. But isn't the issue exactly where the plaintiff fell? It isn't really relevant as to the whole parking lot. And this is where I would disagree with the trial court, too, because the whole icy condition is unnatural. I don't think it's necessary to prove that he fell exactly where the hole is. So that would be our position on that. Now, one thing I for sure, which I led with this in the reply brief, and I do feel very strongly on that, that there's enough evidence from which a jury could conclude that it was unnatural. But I do remiss if I also didn't bring to your attention, which I'm sure you've read in the briefs, about the voluntary undertaking theory. Now, reviewing everything, one could argue that we should get summary judgment on that issue because the Five Points representative testified that salting and sanding was to take place after every snow removal. And she further testified that there would never be melting and refreezing if the ice was salted and sanded properly. So you're saying the voluntary taking was done negligently? Correct. So wasn't it just a few minutes after the snowplow came through that this individual fell? Okay, so there's two issues on that. There's two aspects of negligence. Number one, the thick, bumpy ice, which one could reasonably conclude had been there before that particular day, had not been properly salted or sanded. Also, Elvis testified that that day he didn't see any salt. So there was negligence that day as well. But either way they were, either way or both ways, they were negligent in that voluntary undertaking by not doing the salting or the sanding. So it's an admission on the part of Five Points that after every snow removal they were to do this and that there wouldn't be ice there if they had done it properly. So it's our position that on the voluntary undertaking, clearly there's at least, I mean, I almost feel it's strong enough for summary judgment for plaintiff, but that's not before the court. Clearly there's questions of fact as to whether the voluntary undertaking was performed negligently not just that day but in the past. Do you need to show evidence that the condition caused the unnatural accumulation? That the condition? That the condition of the parking lot caused the unnatural accumulation. What type of evidence would you need to show in order to get past summary judgment, do you think? I think you said you could make a reasonable inference, is that? That's right. I think because, and again, we're not talking just one crime. We're talking about the entire parking lot being in a state of disrepair so that therefore there is an inference that it's an unnatural accumulation. And there are a lot of cases that do say that the issue of whether an accumulation is natural or unnatural is a question of fact for the jury. Well, the fact that the entire parking lot may be in disrepair and that there's a hole 100 feet away from where he fell, you can't really use the general condition of the parking lot to say that, hey, the place where I fell was negligently maintained, can you? You see what I'm getting at? You can't just say, well, generally it was in such bad repair that that must have been the reason that I fell at this location where the X marks the dot. Do you follow me? How do you respond to that? I do follow you, and it is our position that, I mean, it would be impossible for him to, looking at a photo at a deposition, know the exact crack or the exact area. But it's our position that, and again, not just one crack, but the entire lot was filled with cracks, and there were photos that showed that the entire lot was filled with cracks. And because of the entire lot being filled with cracks, the ice formed in an unnatural way, and that's our position on that. Now, we also have, which I'm sure you noted in the briefing as well, that a property owner has a duty to provide a safe means of egress and ingress, and the natural accumulation rule does not abrogate that duty. And there was no way for Elvis and his family to get to the cars without having to encounter this condition. So if your honors were to conclude that you don't believe there's enough, and again, I'm not agreeing with this, but I'm just saying, if you were to conclude that there isn't enough evidence that it's an unnatural accumulation, the property owners and property managers still breach their duty to provide a safe means of ingress and egress to the cars because there was no way for them to get to the car without having to encounter this condition. So that's also another point here. Now, with regard to... Didn't your client, though, testify that he believed that the ice that caused his fall formed as a result of the weather and not the runoff from the snow pile? Didn't your client testify to that? Yeah. Well, there's two separate issues here. And the trial court put all of its eggs in the crane basket, so to speak. In the what basket? Crane. The crane case. Oh, I see. I'm sorry. I didn't mean to be confusing there. And the crane case was not the same theory of the case as our theory of the case. The crane case was that it was water runoff from the snow piles that caused the unnatural accumulation, and the court felt that there was not sufficient evidence to tie in that snow pile to the icy accumulation. And that's not what we're saying. We're saying that what makes this an unnatural accumulation is the condition of disrepair of the parking lot, not necessarily the snow pile. Now, we did put in the briefs and everything that, you know, that Elvis did actually witness not this specific day, but he has witnessed from being there, and the testimony is that he was there frequently taking care of the kids, that he has seen water runoff in the past from the snow pile down to the parking lot. So I felt I would be remiss to not point that out in the briefing because I believe that also creates a reasonable inference which could conclude that it was unnatural. But the fact that he sees that frequently doesn't mean that that was the cause today. Right. And again, I'm distinguishing between the two different theories of what's unnatural. For sure, it could be unnatural from a runoff from a mound of snow, but we're saying it's because of the bad condition of the lot. The negligent snow removal, Mr. Epperport, did you present any evidence that the snow removal efforts caused or worsened the accumulation? Yes. What's your point, though? This is where I say there's almost an admission, if not an outright admission, by Evelyn Doty that it was negligent because she said that if the salting and sanding was done correctly, there would never be melting and refreezing of the ice. So there is evidence there from which one could conclude that there was negligence from the Five Points representative herself, that it would not have been there if they did their job. Certainly, a jury could conclude that from that testimony. Are there any other questions that your honors have at this point? No. Do I have a few minutes left? You do. Okay. All right. Then a few other points with regard to notice. Now, there were arguments by the defendant that there's not evidence of notice on that issue. Again, we also believe that there's sufficient evidence from which one could conclude that there was notice. Now, there's two elements of notice. The law says that if the defendant creates the dangerous condition or has this condition, then you don't have to prove notice, and that's our principal argument here, is that they had notice of the condition of dis- they created the condition of disrepair and, therefore, it's not necessary to prove notice. And that's one element of it. The other element of it is notice of the icy condition. Well, there's clearly enough evidence here where they talk about, where Elvis talks about the thick and bumpy nature of the ice and his sister-in-law saying it's built up. This is evidence of constructive notice of that specific condition. But it would really be our threshold argument that we did not have to prove notice because the defense created the condition. And we, I guess I already mentioned this point, but if Your Honor were to conclude that you don't think it's a natural, an unnatural accumulation, there is still the duty to provide safe ingress and egress on the part of the property owner or property manager, and there was a breach of that duty. And I would, as cited in the briefs, the Ensley case that talks about, maybe I'm repeating and talking more than I should be talking anymore, but that the trier of fact is in a better position to determine whether these type of questions, unnatural versus natural. You will have a chance for a reply as well. Thank you very much. Good morning. May it please the Court, Counsel. My name is Mike Reisis. I'm here today on behalf of the defendants' appellees. Trial Court promptly granted summary judgment in this case for three reasons. First, plaintiff did not show a triable issue on whether the ice and snow accumulation was unnatural. Second, plaintiff did not show a voluntary undertaking to de-ice on this occasion. And three, plaintiff did not show that defendants had notice of a defective condition on the premises. We ask you to affirm. First, the trial court properly applied the natural accumulation rule to the undisputed facts. According to the rule, property owners owe no duty to remove or warn of natural accumulations of ice and snow. Plaintiff has the burden of making a prima facie case that the accumulation was unnatural due to an identifiable cause. Well, Mr. Krakenfurt claims that by the testimony of his clients that there was a hole there and a crack in the parking lot that he proved that there was unnatural accumulation as a result of clients. And you know, Your Honor, that same argument was made in Crank v. Triangle Plaza, a decision of this court. And there, the court took some time to describe the parking lot. It was a gravel parking lot where the plaintiff slipped and fell. And the lot was described as uneven, full of holes, some shallower than others, containing ice. Some of the depressions were up to one inch deep. And guess what happened? Did Crank say that there should have been, if there were an expert to testify to that, it would be a different story? I believe that the way that you would try to show some type of defect would have been to get an expert to testify as to how, I think that happened in Walter, W-O-L-T-E-R v. Sixtino at Third Ware. They had an expert to show how this was a deviation as far as how deep it was. We don't even really know that there was a depression there or there was a crack in that one location. I think that's the point that Justice Spence was making before. We can say as a general rule, you know, the lot may have been rough or it may have, the evidence was from the plaintiff that it was even. But yes, it may have had some low spots in it. By itself, that is not going to be an identifiable cause of ice formation that makes it unnatural. You have to show a direct link between the snow removal efforts or a defect on the premises and the ice that caused the fall. The liability cannot be based on speculation. Now, here the plaintiff only offered speculation that the ice was unnatural. He testified that it had been snowing or raining pretty much the entire day. And all of the lot, not just X marks the spot, all of the lot was thick with ice from the wintry mix. That's page 690 of the record. And specifically, he said, surprise, it's been raining, snowing, sleeting the entire day. Of course, you'd expect all of the lot to be thick with ice. And that's true in response to questions that were asked both by defense counsel and by his own counsel. He said that it came from the elements or blizzard-like weather. He used the word blizzard more than once. He never, plaintiff never tied the accumulation to a particular defective condition of the premises or to the snow removal efforts as required. Quite frankly, yes. Sand or salt? I'm sorry? How about the lack of sand or salt in these cases? Sure. So there I think we're talking about a voluntary undertaking. First of all, there's no written contract in the record that shows that the snow plowing was supposed to include sand or salt. It may be as a practice that that happened in the past. But by itself, just the fact that you did it before doesn't mean that you have a duty to continue to do it on this particular occasion. What if that would have reduced the consequence or the act that occurred here? Well. If there was sand and salt. Sure. It wouldn't have been selected. But you have to actually. So is that a negligent undertaking? Only if you had assumed, if you agreed to do it. And the point is that just because it may have been done as a practice in the past doesn't mean that you have the duty to do it here. There's no written contract that says we're supposed to do that. There's not even a normal contract that says that we're supposed to do that. There's absolutely nothing other than the fact that, yes, in the past they had done that. That does not show a continuing duty to do it. There's another point here, though. And I think this was made by the trial judge in granting summary judgment. We certainly did not know and did not have any notice that that was not being done. The snow plow contractor was in the process of leaving and had just left at the time that the plaintiff was leaving to go get his car in the garage. So how are we supposed to know that he didn't do the job if he was supposed to do it? I'm assuming your point for just a moment. How are we supposed to know that he didn't do his job or that we knew that he had a particular unfitness? He's an independent contractor. He supplies the truck. He supplies the plow. He supplies the, if there's going to be sand in the icing, it's his equipment. He decides how he's going to do his job. If he didn't do it completely, how are we supposed to know that he didn't do it completely if he was just in the process of leaving when the plaintiff fell? So there wouldn't have been enough time for us to even know that the performance was incomplete, much less negligent. Going back for just a moment to the natural accumulation issue. This case is simply indistinguishable from claim and from a DO-MADEO, among others cited in our brief, where the court affirmed a summary judgment based on a similar failure by the plaintiff to show a connection between a snow pile and ice. The plaintiff's argument that the ice could have formed due to cranks and dips in the lot surface ignores the crank court's rejection of that argument. And Gilbert, G-I-L-B-E-R-G, also cited in our brief, but also cited, I believe, in some of the other cases, including Russell v. Village of Lake Mavilla. Plaintiff's cases are all distinguishable. Not one of those cases recognizes liability for a fall that took place while it's still snowing. If there's nothing else, after my argument is done and after I sit down, if there's nothing else that you remember from my argument, I hope you remember that one thing is it was still snowing at the time of the accident. And I don't know of any case that has ever recognized liability in those circumstances under any theory. I think, Justice Shostak, you raised a question about defective conditions and what could be shown. Well, you know, there are defective condition cases, easy to find. Let's suppose you had a leaky gutter. The leaky gutter allows the water to drop in one spot, X marks the spot. There's a depression there, that's Lapidus v. Hahn, it freezes over. Very different from this case. Or McLean, another case where there's supposed to be a defective overhang and a façade that again causes the accumulation of ice to form in one specific location. Here it's everywhere because of the weather. So it's actually somewhat refreshing to have a deposition take place where a litigant actually testifies in a way that hurts this case. And that certainly happens here. It almost makes you restore your faith in humanity in some ways, I suppose. As far as the last issue concerning notice, well, let's assume for the moment that there was some type of defect, defective condition on the premises that caused the ice to form. Plaintiff did not show that we had notice of that defective, that the ice was caused by that defective condition. Plaintiff did not know how long the ice was present. His sister-in-law didn't know how long the ice was present. The property manager had heard no complaints about anyone, about the ice in the lot. And without proof of notice, Plaintiff could not recover. I think we could all agree on that. Bottom line, on this record, it would be speculation to assign any particular cause to the formation of the ice. Could it have come from the weather? Sure. Could it have come from the snow removal efforts? Maybe. Could it have come because there happened to be a crack in that location? Maybe. But it's all possibilities. You don't strain to try to come up with a possibility to defeat summary judgment or to reverse summary judgment. And for all the reasons set forth in our brief, we ask you to affirm the summary judgment granted. Thank you. Thank you very much. Counsel, if you wish to reply. Thank you. A few things. With regard to the voluntary undertaking, the cases that say that there's not a continuing duty to perform this are not applicable here because they admitted through Evelyn Doty, their representative, that they undertook this duty after every snow removal. Let me ask you, though. Mr. Reese's brings up a good point. If the snowplow was just driving away, they would have to have actual constructive knowledge that the snowplow was doing negligent work or that there was something insufficient with what was being done. How would they have had the opportunity to have that? It's a good question. I'm glad you asked the question because for that specific incident, I agree with you. But the testimony, and, again, we're looking at reasonable inferences from the evidence, the testimony is that this was thick, bumpy ice that looked like it had been there a long time. But you've said that a couple times, looks like it has been there for a long time. Who speculated as to how long that ice had been there or that this type of a mark in it means it's been there for a long time and didn't accumulate that day in the blizzard-like conditions that people testified to? I mean, for people that live in the climate that we live in, we're familiar with that. And from his observation, he said it was thick and bumpy and looked like it had been there for a while. And his sister-in-law also testified that it was built up where the exact curves that she used. So I think that there's a reasonable inference. But how long had it been built up? I mean, doesn't that require us to go beyond an inference to full-fledged speculation as to how long that ice had been there, let alone how it got there? I believe so because the testimony of Eva Ndobi is that she personally went out after each and every snowfall to make sure that it was done correctly. So I believe that this should have been observed in one of her prior visits if she didn't have time to get out there on this particular visit. I can tell here. I mean, if she did that, if what she testified was truthful and that she had gone out there the day before the day before and there was salt and sand there, isn't just a reasonable inference that this did accumulate that day in a sleet storm? But even then, she has testified that they're supposed to do it after every removal and that there wouldn't be ice there if they had done it properly. So that's her testimony. I'm just giving you what her testimony is. Now, counsel did not make any reference to the argument that safe ingress and egress needs to be provided and that they had no choice but to pass this accumulation in order to get to the cars. So, you know, if you don't buy our argument that it's an unnatural accumulation, I mean, certainly they were not. It's unrebutted that they weren't providing the safe means of ingress and egress to get to the cars in the garages. With regard to the weather, now, just because Elvis had testified that it came from the elements or the weather, if it's from the weather but that is combined with a defective condition, that's still unnatural even though it came from the sky. So I just felt I had to point that out because we were never saying that it was like from a hose or something like that. I mean, it's from the sky, but if you combine that with the condition of disrepair of the parking lot, then that's what makes it unnatural. I also wanted to point out that the credit courts did not, it's not the same as our situation in terms of the theory that it was the disrepair of the parking lot that caused the problem. In Crane, again, they were talking about the water runoff from the mounds and that they didn't have sufficient evidence to prove that. The only thing the Crane court talked about at all was the Cranes as a fallback position and relied on the Hankler court for the proposition that a parking lot which is rough and full of holes is an unnatural surface as a matter of law, and the Crane court pointed out that the Hankler court actually miscited another court and that that actually wasn't what the Hankler case stated. But the Crane court was not evaluating whether that specific condition was unnatural because of the condition of the parking lot. It was evaluating the runoff from the small mounds. And that was a two-foot by four-foot patch of ice, and the husband, who went out three hours after the fall, saw that there. So that's not the same thing as our situation where the condition of disrepair was under the ice and caused the accumulation. Thank you, sir. Thank you very much. Thank you very much. Thank you both for your arguments this morning. There will be a written decision in due course, and we are adjourned for the day.